STATE of Indiana, Appellant–Plaintiff,

v.

Dean TAYLOR, Appellee–Defendant.

No. 26A01–0605–CR–200.

Court of Appeals of Indiana.

April 4, 2007.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

## OPINION

MATHIAS, Judge.

The State appeals from the Gibson Circuit Court's judgment on the evidence. Dean Taylor ("Taylor") was charged with Class D felony possession of methamphetamine and Class A misdemeanor possession of marijuana. Upon review of the record, we conclude that the trial court erroneously granted Taylor's motion for judgment on the evidence, but we affirm the trial court's judgment because double jeopardy precludes us from vacating the judgment and remanding for a new trial.

**Facts and Procedural History**

On October 15, 2005, Deputy Sheriff Tim Coomer ("Deputy Coomer") was on patrol in Gibson County when he received a dispatch that Taylor, who had two outstanding warrants for his arrest, had been sighted sitting in a red SUV-type vehicle southbound on U.S. Highway 41. Deputy Coomer knew Taylor and was aware of the two outstanding warrants. Deputy Coomer found Taylor in the red vehicle, and he turned on his sirens to initiate a stop.

Taylor, however, sped away with Deputy Coomer in pursuit. Taylor eventually stopped his vehicle after he almost failed to negotiate a curve. Fearing that Taylor would flee, Deputy Coomer pulled his vehicle up beside the driver's side door so that Taylor would be unable to open the door. Deputy Coomer yelled at Taylor to put his hands up. Taylor stuck one hand out the window of his vehicle, but with his other hand he continued to fumble with something in his seat. Once Taylor had exited the vehicle, Deputy Coomer placed him under arrest.

The vehicle Taylor was driving was registered to Autumn and Richard Jones. Autumn later said that she had loaned the vehicle to Taylor earlier that day. While Deputy Coomer was waiting for backup, Taylor told him, "I don't feel right you looking in my—in the vehicle while I'm not here." Tr. p. 117. Twice Taylor told Deputy Coomer he did not want the vehicle searched when he was not present. Upon searching the vehicle, Deputy Coomer saw a rocky white powder and an open folding knife in the driver's seat where Taylor had been sitting and where Taylor had been fumbling around before he exited the vehicle. White powder was also on the driver's side floorboard and in the center console. Deputy Coomer found a clear plastic bag with green plant material and $118 in a silver money clip in the front passenger seat of the vehicle.

Bill Bowles, a forensic scientist with the Indiana State Police Laboratory Division later determined that the rocky white powder substance found on the vehicle's seat, floorboard and console was methamphetamine. The total weight of the methamphetamine collected from the car was about one-third of a gram. A test determined that the green plant material found in the plastic bag was 2.32 grams of marijuana.

On October 26, 2005, the State charged Taylor with Class D felony possession of methamphetamine and Class A misdemeanor possession of marijuana. The trial court conducted a jury trial on May 3, 2006. After the State rested, Taylor moved for a directed verdict. The trial court asked the prosecuting attorney, "Where's the evidence on knowingly and intentionally?" *Id.* at 173. After the State enumerated the circumstantial evidence that had been presented to prove

Taylor knowingly and intentionally possessed the drugs, the trial court stated, "I'll let it go to the jury but it's weak." *Id.* at 177. The defense then rested its case without presenting evidence. Once the jury was seated for the trial to resume, the trial court stated:

> Ladies and gentlemen of the jury, I've not been totally honest with you in regard to this matter because it very seldom, if ever, comes up. But one of the other jobs, that I didn't tell you about, is that I sit as seventh juror in these cases. That means that I have to make sure, in my opinion, that there is sufficient evidence for the matter to actually become one for you to make a decision upon. I have looked at the evidence in this case and I am not of that opinion. I am of the opinion there is a considerable amount of evidence that indicates that the defendant probably did something wrong, and he quite possibly did something wrong. However, I am of the opinion that it does not rise to the level of proof beyond a reasonable doubt. The court will now order that the defendant be released. Judgment in his favor in regard to this matter. Thank you very much for having served in this matter. I hope you don't feel—well, too wronged by my way of doing this. I don't particularly know what all's going on here, frankly, but there are just too many other explanations that could have happened here other than one excluding everything except "he's guilty." I can't allow that to proceed. Thank you very much for having served. You're returned to your private lives. Judgment accordingly.

*Id.* at 178–179.

Once the jury was dismissed, the prosecutor stated on record that he intended to file an appeal. The prosecutor began explaining that "[t]here was plenty of evidence to get this case to a jury...." *Id.* at 179. Then, the trial court interrupted his explanation to state, "[t]here's no question there was evidence to get the matter to a jury." *Id.* In its order, the court held, "Court now finds that the evidence presented does not rise to level [sic] proof beyond a reasonable doubt. Court now ORDERS the defendant be released." Appellant's App. p. 15. This appeal ensued. Additional facts will be added as necessary.

### Discussion and Decision

■■■ It is thoroughly settled in Indiana that a trial court may grant a motion for a judgment on the evidence only "where there is a total absence of evidence upon some essential issue, or where there is no conflict in the evidence and it is susceptible of but one inference, and that inference is in favor of the accused." *State v. Patsel,* 240 Ind. 240, 245, 163 N.E.2d 602, 604 (1960). *See also State v. Casada,* 825 N.E.2d 936, 937–938 (Ind. Ct.App.2005). On appeal, we use the same standard of review as the trial court in determining the propriety of a judgment on the evidence. *Id.* at 937 (citation omitted).

"When the trial court considers entering judgment on the evidence, it must view the evidence in a light most favorable to the party against whom judgment on the evidence would be entered." *Id.* A trial court may not invade the province of the jury by weighing the evidence presented or the credibility of witnesses. *Patsel,* 163 N.E.2d at 604. In fact, our Supreme Court has held that a trial court is "not authorized under Trial Rule 50, in a criminal case, to consider whether the evidence presented could be viewed by a reasonable jury as constituting proof beyond a reasonable doubt." *State v. Goodrich,* 504 N.E.2d 1023, 1024 (Ind.1987).

In the case at hand, the trial court specifically ordered, "Court now finds that the evidence presented does not rise to level [sic] proof beyond a reasonable doubt." Appellant's App. p. 15. This is the incorrect legal standard for granting a directed verdict. A trial court "can only grant the defendant's motion [for a directed verdict] if there is a total absence of evidence on some essential issue or where the evidence is without conflict and susceptible to only one inference, an inference favorable to the defendant." *Goodrich*, 504 N.E.2d at 1024. A defendant's motion for judgment on the evidence should not be granted if the State presents a prima facie case. *Casada*, 825 N.E.2d at 938 (citing *Wilcox v. State*, 664 N.E.2d 379, 382 (Ind.Ct.App.1996)).

In addressing the jury, the trial court stated, "I am of the opinion there is a considerable amount of evidence that indicates that the defendant probably did something wrong, and he quite possibly did something wrong. However, I am of the opinion that it does not rise to the level of proof beyond a reasonable doubt." Tr. pp. 178–179. After granting the directed verdict and dismissing the jury, the trial court readily admitted to the prosecutor, "[t]here's no question there was evidence to get the matter to a jury." *Id.* at 179. As we have previously held, "[u]nder no circumstances may a trial court considering a criminal defendant's motion [for directed verdict] weigh the evidence or consider the credibility of witnesses." *Casada*, 825 N.E.2d at 939. From the record before us, it appears that the trial court improperly engaged in weighing the evidence in considering the defendant's motion for directed verdict.

The trial court also told the jury, "one of the other jobs, that I didn't tell you about, is that I sit as seventh juror in these cases. That means that I have to make sure, in my opinion, that there is sufficient evidence for the matter to actually become one for you to make a decision upon." Tr. p. 178. The trial court has confused a motion for judgment on the evidence, governed by Trial Rule 50, with the "thirteenth juror" principle grounded in Indiana Trial Rule 59(J)(7) regarding motions to correct error. When reviewing a motion to correct error, the trial court does serve as a "thirteenth juror" and has an affirmative duty to weigh conflicting evidence. *Precision Screen Mach., Inc. v. Hixson*, 711 N.E.2d 68, 70 (Ind.Ct.App. 1999). As the thirteenth juror, the trial court (1) hears the case along with the jury; (2) assesses the credibility, intelligence and wisdom of the witnesses; and (3) determines whether the verdict is against the great weight of the evidence. *Id.* If the trial court determines that the jury has returned a verdict that is against the weight of the evidence, then the trial court has a duty to grant a new trial. *Id.*

In the case at hand, however, the defense moved for a judgment on the evidence under Trial Rule 50. There was no motion to correct error, as the trial court did not give the jury an opportunity to render a verdict. When, as here, the defense moves for a directed verdict under Trial Rule 50, "the trial court may not act as a 'thirteenth juror' and weigh the evidence or judge witness credibility." *Dughaish ex rel. Dughaish v. Cobb*, 729 N.E.2d 159, 167 (Ind.Ct.App.2000), *trans. denied.* "The trial court may only order a new trial as the 'thirteenth juror' under Trial Rule 59(J)," which was not at issue in this case. *Id.*

Therefore, it was improper to issue a directed verdict, which is governed by Trial Rule 50, under the pretext of the "thirteenth juror" principle premised on Trial Rule 59(J)(7). The thirteenth juror principle is not intended to "invite the trial

judge to cavalierly substitute his evaluation of the evidence in place of a contrary evaluation made by the jury." *Ingersoll–Rand Corp. v. Scott*, 557 N.E.2d 679, 684 (Ind.Ct.App.1990), *trans. denied.* Likewise, it is not intended to allow the trial court to invade the province of the jury by undertaking the role of the jury in weighing the evidence and judging the credibility of witnesses.

██ Despite the erroneous judgment on the evidence for Taylor, he cannot be retried because an erroneous entry of acquittal by the trial court acts as an acquittal for double jeopardy purposes. *Casada,*

825 N.E.2d at 940 (citing *State v. Gradison*, 758 N.E.2d 1008, 1013 (Ind.Ct.App. 2001)). *See also Goodrich,* 504 N.E.2d at 1024. Accordingly, we cannot vacate the trial court's erroneous judgment. *Id.* Therefore, we must affirm.

Affirmed.

NAJAM, J., and MAY, J., concur.