

**FILED**

Apr 15 2015, 9:11 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

P. Jeffrey Schlesinger
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Office of the Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the matter of: L.E., et al;

G.E.

*Appellant-Petitioner,*

v.

Indiana Department of Child
Services,

*Appellee-Respondent.*

April 15, 2015

Court of Appeals Cause No.
45A04-1404-JC-193

Appeal from the Lake Superior
Court

Lower Court Cause No.
45D06-9504-JC-1521

The Honorable Thomas P.
Stefaniak, Jr., Judge

**Pyle, Judge.**

## Statement of the Case

G.E. appeals the juvenile court's denial of her petition to expunge a

substantiated report of child neglect regarding her children. She claims that she

presented clear and convincing evidence that she was unlikely to be a future

perpetrator of neglect and that there was no reason to justify the retention of the

record by the Department of Child Services ("DCS"), thus satisfying the

requirements of INDIANA CODE § 31-33-27-5. Concluding that G.E. did not

carry her burden of presenting clear and convincing evidence satisfying the

statutory requirements, we affirm the juvenile court's denial of G.E.'s

expungement petition.

We affirm.

# Issue

Whether the juvenile court erred in denying G.E.'s petition.

# Statement of Facts

On or about December 15, 2000, the Lake County Superior Court, juvenile

division, entered an order terminating G.E's parental rights to four of her

children. In relevant part, the juvenile court concluded as follows:

> The child(ren) [have] been removed from the parent[] for [at] least six
> (6) months under a dispositional decree[] of this Court dated 7-06-95,
> Cause Number[] 49D069504JC01521.

> There is a reasonable probability that the conditions resulting in the
> removal of the [children] from the [parent's] home will not be
> remedied in that: The [C]hildren were removed from Mother in 1995[]
> due to neglect. Mother's home was found to be filthy and the Children
> had poor attendance in school. Mother had a history of drug abuse.
> The Case Plan for reunification included drug treatment, parenting
> classes, random drug screens, and visitation. Although Mother
> attended two drug treatment programs, Mother relapsed after both

programs. Mother's visits with the Children were sporadic. Mother did not complete parenting classes. Mother has had very little involvement with the Children recently. [L.E.] had been returned to Mother briefly but was later removed again[] due to Mother's relapse. None of the other Children were ever returned to the Mother since their initial removal.

There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child[ren] in that: for the same reasons stated above.

It is in the best interest of the [Children] and [their] health, welfare[,] and future that the parent-child relationship between the child[ren] and the parents be forever fully and absolutely terminated.

(App. 40).

[5] In June of 2013, G.E. began working as a cook at Pinnacle Family Child Care ("Pinnacle") in Gary. After about two months, Pinnacle informed G.E. that she could no longer work there because of the substantiated report of neglect regarding her children. Pinnacle eventually allowed G.E. to return and ensured that she did not have direct contact with children. *See* Tr. 11-12.

[6] On November 13, 2013, G.E. filed a petition to expunge the records of her children in need of services ("CHINS") case pursuant to INDIANA CODE § 31-33-27-5. The juvenile court held a hearing on G.E.'s petition on February 7, 2014. The only evidence presented was G.E.'s testimony. She told the juvenile court that she had not used any controlled substances since 2003, that she is in contact with all of her children and some of her grandchildren, and that she has

had no further contact with the juvenile courts, nor had she committed any crimes.

[7] DCS relied on the proceedings from the CHINS and termination of parental rights cases. The juvenile court also took judicial notice of the order terminating G.E.'s parental rights. The juvenile court took G.E.'s petition under advisement and denied her petition later the same day.

[8] On March 10, 2014, G.E. filed a Motion to Correct Errors. The juvenile court denied G.E.'s motion without a hearing, and now she appeals.

## Discussion

[9] G.E. appeals the denial of her motion to correct errors regarding her petition to expunge the substantiated report of child neglect. She essentially claims that she presented clear and convincing evidence satisfying the requirements of INDIANA CODE § 31-33-27-5 and, because of that, the juvenile court should have granted her petition.

[10] The legislature enacted the Expungement of Child Abuse or Neglect Reports statute in March of 2012, and this appears to be our first review of a petition under this statute. INDIANA CODE § 31-33-27-5 provides the following:

> (a) This section applies to information relating to substantiated reports in any records of [DCS].

> (b) An individual identified as a perpetrator of child abuse or neglect in a substantiated report may file a petition with a court exercising juvenile jurisdiction in the county in which

the individual resides, requesting that the court order [DCS] to expunge the substantiated report and related information.

(c) The petitioner shall:

(1) name [DCS] as respondent in the petition; and

(2) serve [DCS] with a copy of the petition and a summons.

(d) The court shall hold a hearing on the petition and any response filed by [DCS].

(e) In considering whether to grant the petition filed under this section, the court may review:

(1) the factors listed in IC 31-39-8-3 in relation to the petitioner, if the substantiated report was the subject of a juvenile court case; and

(2) any facts relating to the petitioner's current status, activities, employment, contacts with children, or other circumstances relevant to consideration of whether the petition should be granted.

(f) The court *may* grant the petition if the court finds, by clear and convincing evidence, that :

(1) there is little likelihood that the petitioner will be a future perpetrator of child abuse or neglect; and

(2) the information has insufficient *current* probative value to justify its retention in records of the department for future reference.

(emphasis added).

[11] The interpretation of a statutory scheme is a question of law reserved for the courts. *Garcia v. State*, 979 N.E.2d 156 (Ind. Ct. App. 2012). When determining the legislature's intent, we look at the "plain language of the statute and attribute the common, ordinary meaning to terms found in everyday speech." *Id*. at 158. If the word "shall" is used, it is construed as mandatory language creating a statutory right to a particular outcome after certain conditions are met. *Romine v. Gagle*, 782 N.E.2d 369, 379 (Ind. Ct. App. 2003), *trans. denied*. However, the "term 'may' in a statute ordinarily implies a permissive condition and a grant of discretion." *Id*. at 380. A trial court abuses that discretion when its decision is clearly against the logic and effect of the facts and circumstances before it. *An–Hung Yao v. State*, 975 N.E.2d 1273 (Ind. 2012).

[12] > The clear and convincing standard is an intermediate standard of proof that[] lies between a preponderance of the evidence and beyond a reasonable doubt which is required to find [a defendant] guilty in criminal prosecutions. The burden of proof by clear and convincing evidence is not a burden of convincing you that the facts which are asserted are certainly true or that they are almost certainly true or are true beyond a reasonable doubt. It is, however, greater than a burden of convincing you that the facts are more probably true than not.

[13] *In re G.Y.*, 904 N.E.2d 1257, 1260, n.1 (Ind. 2009) (internal quotation marks and citations omitted).

[14] Because G.E.'s burden of proof is clear and convincing, on appeal we will not impose our view on whether the evidence meets this standard. *See In re Marriage of Huss*, 888 N.E.2d 1238, 1245 (Ind. 2008) (citing *Guardianship of B.H.*, 770 N.E.2d 283, 288 (Ind. 2002)). Rather, we consider only the probative evidence and reasonable inferences supporting the trial court's decision to determine whether clear and convincing evidence was presented. *Id.* Where, as done here, the juvenile court enters a general order, "on appellate review the trial court's judgment will be affirmed if sustainable on any theory or basis found in the record." *J.M. v. Review Bd. Of Indiana Dept. of Workforce Development*, 975 N.E.2d 1283, 1289 (Ind. 2012).

[15] Here, the only evidence presented was G.E.'s testimony that she had not used any controlled substances since 2003, that she was is in contact with all of her children and some of her grandchildren, and that she had not had any further contact with the juvenile courts or committed any crimes. Because G.E.'s burden of proof is clear and convincing evidence, and that burden is greater than a preponderance of the evidence, it was not unreasonable for the juvenile court to deny her petition where the only evidence presented was her testimony. *See, e.g.*, *Petition of Meyer*, 471 N.E.2d 718, 721 (Ind. Ct. App. 1984) (clear and convincing standard not met where Mother's testimony of daughter's desire to change surname was the only evidence).

[16] In addition, even if we were to assume that G.E's testimony alone established by clear and convincing evidence that she no longer posed a threat to children, the juvenile court still did not err. INDIANA CODE § 31-33-27-5(f) also requires

G.E. to show that her substantiated report of neglect or abuse no longer has *current* probative value to keep in DCS's records. Here, the fact that G.E. chose to work at a child care center makes her history of child neglect and substance abuse relevant, as INDIANA CODE §§ 31-33-26-2 thru 31-33-26-16 require DCS to maintain a database of perpetrators like G.E. and make that database available to certain people and entities, including child care providers. Further, child care providers are prohibited by administrative rule from employing or utilizing "the services of a person known by the division and reported to the center as a substantiated perpetrator of child abuse." 470 Ind. Admin. Code 3-4.7-13(c) (2015). Further, if a criminal history check of an employee shows that an offense of child abuse, neglect, or exploitation has occurred, "sufficient grounds exist to revoke or deny licensure, deny employment or dismiss an employee[.]" 470 IAC 3-4.7-8(c)(16) (2015).[1] Given the potential risk to Pinnacle's child care license, the statutory and administrative schemes governing the operation of child care providers make clear that G.E.'s records have probative value.

[17] Therefore, we find that G.E. has not shown by clear and convincing evidence that (1) there is little likelihood that she will be a future perpetrator of child abuse or neglect; and (2) that there is insufficient current probative value to

[1] We note that a criminal history check may not have revealed information regarding G.E.'s child and substance abuse history contained in DCS's records. However, the language of the regulatory scheme highlights the probative value of an individual's history of child or substance abuse as it relates to working for a child care provider, criminal or otherwise.

justify the retention of her records by DCS for future reference. We affirm the juvenile court's denial of her petition.

[18] Affirmed.

[19] Barnes, J., and May, J., concur.