## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 08 2019, 10:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brandon E. Murphy
Cannon Bruns & Murphy
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jason Bishop,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 8, 2019

Court of Appeals Case No.
18A-CR-2361

Appeal from the
Jay Circuit Court

The Honorable
Brian D. Hutchison, Judge

Trial Court Cause No.
38C01-1803-F4-11

**Kirsch, Judge.**

[1] Jason Bishop ("Bishop") pleaded guilty to maintaining a common nuisance,[1] a Level 6 felony, and was sentenced to one year with two months on home detention and ten months suspended to probation. Bishop appeals and raises the following restated issue for our review: whether the trial court abused its discretion when it entered judgment of conviction for maintaining a common nuisance as a Level 6 felony rather than as a Class A misdemeanor.

[2] We affirm.

## Facts and Procedural History

[3] At the time of Bishop's offense, Bishop lived in his home with his girlfriend,[2] Devonna Tilley ("Tilley"), and Tilley's son G.B. *Appellant's App. Vol. II* at 31, 38, 42. On March 13, 2018, G.B. confided to his middle school principal that he was tired of his mother selling drugs. *Id*. at 38. G.B. explained that his mother would weigh methamphetamine in front of him and did not try to hide from him the fact that she sold methamphetamine. *Id*. G.B. went on to state that he had observed Bishop and Tilley arguing earlier the same morning, before G.B. left for school, about the places around the house where Tilley kept

---

[1] *See* Ind. Code § 35-45-1-5(c).

[2] It is unclear whether Bishop and Tilley were engaged or just in a romantic relationship at the time of sentencing; when asked by the trial court during the sentencing hearing whether Tilley was Bishop's girlfriend, Bishop replied, "I mean, we were engaged but like since this has all happened things are kind of rocky." *Tr. Vol. II* at 19.

her drugs. *Id*. G.B. also told stated that he had seen his mother sell methamphetamine recently in the bathroom of Bishop's home. *Id*.

[4] Later that day, the Dunkirk Police Department, Indiana State Police, Jay County Sheriff's Department, and Redkey Police Department executed a no-knock search warrant for Bishop's residence. *Id*. at 39-40. During the search, law enforcement discovered a plastic box holding methamphetamine and other items suspected of use in the consumption and dealing of controlled substances. *Id*. at 40. Throughout the house, law enforcement also found scales, lighters, razor blades, glass smoking devices, a grinder, rolling papers, a metal spoon, a five-gram weight, syringes, plastic bags, some of which contained residue, several different pills, and numerous handguns, among other items. *Id*. at 40-41.

[5] Bishop was arrested and transported for interview with law enforcement. During his interview, Bishop was asked whether he was concerned about what the police may have found in his home, and he responded, "No, [i]t's been causing fights." *Id*. at 42. Bishop told the police that he had recently informed Tilley that she had to move out of his house and that she had begun packing her things. *Id*. When Bishop was asked whether he knew why the police were at his residence, he replied, "I assume that something got out at some point," and clarified, "well either she bought or sold to somebody or something." *Id*. Bishop informed the police that Tilley had been dealing methamphetamine since "before Christmas." *Id*.

On March 27, 2018, the State charged Bishop with dealing methamphetamine as a Level 4 felony, maintaining a common nuisance as a Level 6 felony, and unlawful possession of a syringe as a Level 6 felony. On July 19, 2018, Bishop pleaded guilty to maintaining a common nuisance, and the State dismissed the Level 4 felony dealing in methamphetamine and the Level 6 felony unlawful possession of a syringe charges. Sentencing was left entirely to the discretion of the trial court. On August 30, 2018, a sentencing hearing was held, and Bishop argued that the trial court should enter judgment of conviction as a Class A misdemeanor instead of a Level 6 felony because there were no aggravating factors and several mitigating factors, including no criminal history, his guilty plea saved the State resources, the crime caused no serious harm to persons or property, and he was gainfully employed. *Tr. Vol. II* at 20-21. The trial court questioned Bishop and asked him whether Tilley was still living in his home. *Id*. at 18-19. Bishop stated that she was, but that she had nowhere to go. *Id*. at 19. Bishop also admitted that his sixteen-year-old son lived in his residence. *Id*. at 16-17, 19. The trial court declined to enter judgment as a Class A misdemeanor and sentenced Bishop to one year with two months on home detention and ten months suspended to probation. Bishop now appeals.

## Discussion and Decision

Bishop argues that the trial court abused its discretion when it declined to enter judgment of conviction as a Class A misdemeanor for his conviction of maintaining a common nuisance when it had authority to do so. Bishop asserts that this was an abuse of discretion because, at sentencing, the trial court found

no aggravating factors and only mitigating factors. Specifically, he contends that because he had no criminal history, his crime did not cause or threaten serious harm to persons or property, he was gainfully employed, and he had a son who was solely dependent on him, the trial court should have exercised its discretion and entered judgment of conviction as a Class A misdemeanor.

[8] Pursuant to Indiana Code section 35-50-2-7(c), when a defendant has committed a Level 6 felony, the trial court may enter judgment of conviction as a Class A misdemeanor and sentence accordingly. Under that subsection, there are exceptions where trial courts do not have discretion to do so and must enter judgment of conviction as a Level 6 felony: (1) when a defendant has committed a prior, unrelated felony for which judgment was entered as a conviction of a Class A misdemeanor and the prior felony was committed less than three years before the second felony was committed; (2) the underlying offense is domestic battery under Indiana Code section 35-42-2-1.3; or (3) the underlying offense is for child pornography under Indiana Code section 35-42-4-4(d). Ind. Code § 35-50-2-7(c). In all other cases, the trial court has discretion as to whether it enters the conviction as a misdemeanor rather than a felony. *Id*. If a trial court decides to enter the conviction as a misdemeanor, it is required to enter a specific reason for its decision into the record, but the statute does not require a trial court to make such a detailed finding when it decides to keep the conviction as a Level 6 felony.

[9] Because the use of the word "may" in Indiana Code section 35-50-2-7(c) implies that the statute is permissive and grant discretion to the trial court. It

does not create a right to the reduction of a Level 6 felony to a Class A misdemeanor. *See Alden v. State*, 983 N.E.2d 186, 189 (Ind. Ct. App. 2013) (citing *Romine v. Gagle*, 782 N.E.2d 369, 380 (Ind. Ct. App. 2003), *trans. denied*) (noting that the trial court was free to deny a petition for reduction of the conviction from a felony as long as doing so was not an abuse of discretion), *trans. denied*. Therefore, we review the exercise of such a discretionary decision for abuse of discretion. *Id.* A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

[10] Here, although the trial court found that there were several mitigating factors, other evidence supports the trial court's decision to enter judgment of conviction as a Level 6 felony and not as a Class A misdemeanor. Bishop pleaded guilty to maintaining a common nuisance, which is "knowingly or intentionally maintain[ing] a building or structure . . . for the unlawful use, manufacture, keeping, sale, delivery, or financing the delivery of controlled substances or items of drug paraphernalia." *Appellant's App. Vol. II* at 6, 23-25. This was based on evidence that Tilley, Bishop's live-in girlfriend, kept drugs and other paraphernalia in his home and was involved in drug activity inside of Bishop's home, and Bishop was aware of this activity and the presence of drugs in his home. *Tr. Vol. II* at 17, 21. Moreover, at the sentencing hearing, Bishop testified that Tilley still lives with him in his home. *Id.* at 17-18, 19. The trial court questioned Bishop and twice asked him whether he thought it was a good idea that Tilley was still in his home. *Id.* at 19. Bishop responded that "[R]ight now [Tilley] has no where [sic] to go . . ." and that it is in his nature to try to

"help out." *Id*. The evidence showed that in the past Bishop had tolerated Tilley keeping drugs in the home and her drug activity within his home, which is what led to Bishop's conviction. *Appellant's App. Vol. II* at 38, 42. Although Bishop testified that he had instituted a policy that Tilley was no longer allowed to have guests or drugs in his house, it was reasonable for the trial court to believe that Tilley's old activities may continue while she is living in Bishop's home. Trial courts are free to decline to reduce a conviction from a felony to a misdemeanor as long as the "denial is supported by the logic and effect of the facts." *Alden*, 983 N.E.2d at 189. Here, the evidence showed that Bishop's conviction had not prompted him to take any steps to change his living situation, and the trial court could reasonably have concluded that Bishop's failure to do so in response to what should have been a wakeup call justified the entry of a Level 6 felony rather than a Class A misdemeanor.

[11] Although the trial court found mitigating factors, including Bishop's lack of a criminal history and his employment, it was not required to enter conviction as a misdemeanor rather than a felony. Ind. Code § 35-50-2-7(c). While Bishop did not have a criminal history, his conduct following his guilty plea in allowing Tilley to continue to live in his home indicates that he has taken very few steps toward making sure similar offenses do not occur in the future. Based on the trial court's questioning of Bishop regarding Tilley living with him, it appeared to be concerned with such a future outcome. We conclude that the trial court

did not abuse its discretion when it entered judgment of conviction as a Level 6 felony and not as a Class A misdemeanor.[3]

[12]    Affirmed.

Vaidik, CJ., and Altice, J., concur.

---

[3] We note that, although the trial court did not reduce Bishop's conviction to a Class A misdemeanor at the time of sentencing pursuant to Indiana Code section 35-50-2-7(c), there exists a procedure under subsection (d) through which Bishop can petition the trial court to convert his Level 6 felony conviction to a Class A misdemeanor if certain circumstances are found to exist in the future.